## THE SCOW ZELLER NO. 12.
## ZELLER MARINE CORPORATION v. Mc-ALLISTER LIGHTERAGE LINE, Inc., et al.

### No. 17092.

District Court, E. D. New York.

Jan. 6, 1947.

Foley & Martin, and Louis J. Lawrence, all of New York City, for libellant.

Purdy & Lamb and Edmund F. Lamb, all of New York City, for respondent McAllister Lighterage Line, Inc.

Macklin, Brown, Lenahan & Speer, and Gerald J. McKernan, all of New York City, for James Healing S. S. Co., Inc., respondent-impleaded.

Tompkins, Boal & Tompkins, and Arthur M. Boal, all of New York City, for Lykes Bros. S. S. Co., respondent-impleaded.

INCH, District Judge.

This is a suit in the Admiralty. Libellant, Zeller Marine Corporation, owned the scow Zeller No. 12, which was chartered to the respondent, McAllister Lighterage Line, Inc., and returned in a damaged condition. Libellant thereupon sued McAllister and the latter impleaded James Healing Company, a stevedore concern, and Lykes Bros., Steamship Company, Inc., owner of the steamship Thompson Lykes.

A careful consideration of all the testimony, which includes depositions, satisfies this court that libellant is entitled to a decree and also against whom such decree should be granted.

There is no dispute but that the scow Zeller No. 12 was damaged at her bow by the propeller of the steamship Thompson Lykes. In fact, had it not been for the promptness of those in charge of the steamlighter Spar, belonging to the respondent McAllister, a much more serious result and damage would undoubtedly have occurred.

The accident happened in the afternoon of March 22, 1944, at Caven Point, New Jersey, at a time when this Nation was in the state of war, and this fact must not be lost sight of. The tide was flood, a light southeasterly wind was blowing and the day was fair. The steamship was being loaded, from the scow Zeller No. 12, with a large quantity of bombs and, under war time regulations, in view of the plain danger that surrounded loading such explosive materials, those in charge of the steamship were obliged to keep the vessel with her bow out and her engines going, in order to immediately leave the spot should danger from the loading or other emergency make it necessary. To do this the steamship kept her propeller slowly revolving, practically at only about eight revolutions a minute, and the fact that the propeller was so slowly revolving was plainly observable to the stevedores who were engaged in this unloading of the scow Zeller No. 12, into the steamship. I find therefore that so far as the steamship is con-

cerned there was no liability on its part because the propeller was so moving.

Previous to the accident the scow Zeller No. 12, had been placed alongside the steamship and for about an hour prior to 4 o'clock the scow Zeller had been moved along by the stevedores to about opposite No. 5 hold of the steamship. This brought the bow of the scow Zeller No. 12 only a few feet away from the slowly turning propeller of the steamship. This position was necessary for the proper loading of the steamship and in addition lines properly secured the Zeller in this position which prevented her from moving further aft, particularly the stern lines running from the scow Zeller to the steamship. In addition, the steamlighter Spar, owned by McAllister, was lying alongside the scow Zeller facing bow out, with lines made fast to her, so that the scow Zeller could also be moved if such move became necessary in the interest of the stevedores or again in case of emergency.

A minute before the accident the captain of this steamlighter had been in his pilot house. Seated in this pilot house was a Coast Guardsman, a disinterested eye witness, who had been assigned to watch the loading. The scow captain was below. About 4 o'clock those in charge of the stevedores, some of whom were on the scow Zeller and others on the deck of the steamship, decided to move this scow Zeller but carelessly and without warning to the steamlighter and first making sure that the steamlighter was aware of such intended move so that it could protect the scow Zeller, these stevedores then proceeded to loosen some of the lines running from the scow to the steamship with the result that before the steamlighter could overcome this careless act, the bow of the Zeller moved into collision with the propeller of the steamship, receiving certain damage.

This careless move by the stevedores was observed by this disinterested eyewitness, the Coast Guardsman, almost as soon as it started and he shouted a warning. This brought the captain of the steamlighter, who had only stepped out of the pilot house, and he immediately started his engines forward bringing the scow Zeller away from the propeller and, as I have said,

avoiding a much more serious situation. In the meantime also, the captain of the scow Zeller had come up and he cooperated with the action of the steamlighter. All of these actions took place in about the time it has taken to tell about it, but the evidence satisfies me that the accident to the scow Zeller occurred solely through this negligence of the stevedores.

Libellant therefore is entitled to a decree with costs and disbursements, against the impleaded respondent James Healing Company, Inc. The petition of McAllister impleading the Lykes Bros. Steamship Company, Inc., is dismissed with costs and disbursements against the McAllister. As I find no negligence on the part of the McAllister Lighterage Line, Inc., the libel is dismissed as against it, but without costs.

Submit findings of fact and conclusions of law. As to this, if counsel for Zeller, McAllister, and the Steamship Company desire to submit proposed findings I suggest that, so far as possible, they agree upon one set of proposed findings.